**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN KESSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 6265 |
| | ) | |
| FORD MOTOR COMPANY, | ) | Judge Jorge L. Alonso |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the motion of defendant, Ford Motor Company ("Ford"), to dismiss the complaint. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

This diversity suit arises out of a fatal vehicle collision that occurred in Chicago on August 14, 2012. Plaintiff, John Kesse, was driving a 2007 Ford Crown Victoria taxicab.[1] Plaintiff alleges that the taxicab spontaneously and without his intention or direction "suddenly accelerated automatically at a high rate of speed"; he tried to stop the vehicle but was unable to do so despite repeated braking attempts; and he "was forced to take drastic evasive efforts to stop the vehicle by hitting a pole on the sidewalk as opposed to hitting another motor vehicle in the roadway ahead." (Compl. ¶¶ 7-9.) The taxicab hit a light pole and then struck and killed a pedestrian. The State of Illinois brought criminal charges against plaintiff in connection with the pedestrian's death; that case, 12 CR 18667, is still pending.

---

[1]Plaintiff leased the taxicab from a company called BMX-Chicago and Associates, Inc. (Compl. ¶ 6.)

Plaintiff alleges that Ford defectively designed the vehicle in that the vehicle (1) was susceptible to electromagnetic interference, which caused sudden unintended acceleration; (2) lacked an adequate fail-safe braking system; and (3) lacked an adequate brake override system to correct sudden unintended acceleration. (*Id.* ¶¶ 13-28.) Plaintiff seeks damages for "personal and financial injuries," the particulars of which are discussed below and were allegedly caused by the design defects. (*Id.* ¶¶ 29, 42.)

The complaint contains five counts: strict products liability (Count I); failure to warn (Count II); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count III); breach of express warranty under 810 ILCS 5/2-313 (Count IV); and "tolling of the statute of limitations" (Count V).

Ford moves to dismiss the complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

### A.    Legal Standards

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570, 556 (2007)). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## B.     Strict Products Liability and Failure to Warn (Counts I and II)

In Count I, a claim for strict products liability, plaintiff alleges that his injuries are "directly attributable" to the design defects in Ford's vehicle. (Compl. ¶ 53.) In Count II, plaintiff alleges that Ford failed to warn of the alleged defects. Both counts incorporate plaintiff's damages allegations. Plaintiff alleges that he "suffered a personal injury" as a result of the collision and was taken to Stroger Hospital "and consequently suffered money damages." (*Id.* ¶ 30.) He also alleges that he suffered financial losses "since he would not have leased the vehicle had he known of its design defects" and "since he paid more money to enter the vehicle lease which he would not have paid had he known of the vehicle's defects." (*Id.* ¶¶ 32-33.) Plaintiff also alleges that he suffered other financial losses "by incurring money obligations and damages in the defense of his criminal case," including attorneys' fees and expert-witness fees, and by losing income as a taxi driver because after the collision, a criminal court judge and the City of Chicago prohibited him from driving. (*Id.* ¶¶ 35-38.) Furthermore, plaintiff alleges that he "suffered a personal injury . . . by the loss of his civil rights in an improper arrest for

negligent homicide and improper criminal indictment and defense against improper criminal charges." (*Id.* ¶ 40.)

Ford contends that plaintiff has failed to properly allege these claims under Illinois law because plaintiff seeks economic damages, which are barred by the economic-loss doctrine. This doctrine, also known in Illinois as the *Moorman* doctrine, precludes tort liability in cases where the plaintiff suffers purely economic losses. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982) (holding that a plaintiff alleging products liability could not recover damages for purely economic losses under the tort theories of strict liability, negligence, or innocent misrepresentation). "'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-- without any claim of personal injury or damage to other property' as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" *Id.* at 449 (citation omitted). There are exceptions to the economic loss doctrine where (1) the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden and calamitous occurrence; (2) the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; or (3) the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 48-55 (Ill. 1997).

Plaintiff contends that the "sudden and calamitous occurrence" exception applies here. (Pl.'s Resp. 1-3.) This exception has been described, admittedly rather circularly, as requiring an occurrence that is "'highly dangerous and presents the likelihood of personal injury or injury to

other property.'"  *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 435-36 (Ill. App. Ct. 2002) (emphasis omitted) (quoting *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 807-08 (N.D. Ill. 1996)); *see also Loman v. Freeman*, 890 N.E.2d 446, 452 (Ill. 2008) ("Th[e *Moorman*] court had in mind fires, explosions, or other calamitous occurrences due to the failure of a product and the resulting risk of harm to persons or property.").  Ford replies that while the collision may have been a sudden and calamitous occurrence, plaintiff still cannot avoid the application of the economic-loss doctrine with respect to his claimed economic losses. (Def.'s Reply 2-3.)

The Court agrees with Ford.  In *Allstate Insurance Company v. Pulte Homes of St. Louis, LLC*, No. 10 C 237, 2010 WL 4482360, at *4 (N.D. Ill. Nov. 1, 2010) (Dow, J.), the plaintiff argued that once the exception for a sudden and calamitous event applies, "a plaintiff may recover both economic losses and non-economic losses."  Judge Dow rejected the argument, citing Illinois decisions and federal decisions applying Illinois law, and held that the exception does not allow a plaintiff to pursue damages that do not result from personal injury or damage to property extrinsic to the faulty product itself.  *Id.* at 4-5 (citing, *inter alia, Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 810 N.E.2d 235, 249 (Ill. App. Ct. 2004) (applying the economic-loss doctrine and stating that "the trial court correctly dismissed that portion of the third amended complaint seeking contribution based on the loss of the house, but should not have dismissed that part of plaintiffs' claim seeking contribution based on the personal property damages incurred by [plaintiffs]")).  The Court adopts Judge Dow's analysis in *Allstate*.

The *Moorman* doctrine, therefore, does not entirely bar plaintiff's strict liability and failure-to-warn claims, but given his theories of injury, it severely restricts his avenues of recovery.  Plaintiff may pursue recovery in tort for the personal injury he alleges in paragraph 30

of the complaint.[2]  He is barred, however, from pursuing the other damages he seeks--the alleged excessive lease payments, lost income (which is not alleged to have resulted from personal injury, but from his driving prohibition), and fees and expenses incurred in connection with the criminal litigation--because they are economic losses.[3]

Plaintiff's recoverable damages for personal injury would not include damages allegedly attributable to the "loss of his civil rights," as is alleged in paragraph 40 of the complaint. Plaintiff maintains in his response that he is not alleging damages under any federal civil rights statutes, but "merely characterizing the type of pain and suffering and emotional distress he endured in the manner of his deprivation of civil rights as being unjustly imprisoned, criminally charged, and defending a pending criminal case resulting from Ford's acts." (Pl.'s Resp. 5.) This argument ignores the fact that plaintiff has failed to plead any emotional distress.  Even if he had, damages for emotional distress would not be recoverable because plaintiff has pleaded that the City of Chicago and the State of Illinois, not Ford, engaged in the conduct alleged to have caused the distress.

Plaintiff, citing *Nalivaika v. Murphy*, 458 N.E.2d 995 (Ill. App. Ct. 1983) and *Sorenson v. Fio Rito*, 413 N.E.2d 47 (Ill. App. Ct. 1980), argues that under the "third-party litigation exception," he is not barred from recovering the fees incurred in the criminal litigation.  (Pl.'s Resp. 3-4.)  These decisions are inapposite because the plaintiffs' claims fell within other exceptions to the *Moorman* doctrine.  In *Nalivaika*, plaintiffs' damages were alleged to have

---

[2]Plaintiff does not seek recovery for any property damage.

[3]*Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*, No. 05 C 1698, 2005 WL 3159680 (N.D. Ill. Nov. 22, 2005), cited by plaintiff, is not to the contrary.  The court in *Mercury* held that the plaintiff could recover for lost profits stemming from property damage.

been caused by fraud. 458 N.E.2d at 996. In *Sorenson*, plaintiff was awarded damages for fees caused by legal malpractice. 413 N.E.2d at 49. Legal malpractice is an exception to the *Moorman* doctrine. *See Collins v. Reynard*, 607 N.E.2d 1185, 1187 (Ill. 1992).

Plaintiff's claims in Counts I and II survive only to the extent that plaintiff seeks damages for personal injury. The claims are dismissed to the extent that plaintiff seeks to recover economic losses with respect to alleged excessive lease payments, lost income caused by plaintiff's driving prohibition, and fees and expenses incurred in connection with the criminal litigation. Because the Court sees no possibility of successful amendment as to these dismissed claims, the dismissal will be with prejudice.

## C.     Statutory Fraud (Count III)

Ford contends that plaintiff fails to state a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA") because plaintiff has not alleged any deceptive act or practice and has not pleaded the claim in accordance with Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Where a plaintiff alleges deceptive practices under the CFDBPA, he must satisfy Rule 9(b)'s heightened pleading standard. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441, 446-47 (7th Cir. 2011). The elements of a CFDBPA claim are "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009)).

Plaintiff fails to state a claim for violation of the CFDBPA because he fails to allege an actionable deceptive act or practice on Ford's part. In Count III, plaintiff merely alleges that his vehicle had a design defect; he does not allege a fraudulent statement or omission. In his response brief, plaintiff cites his allegations from prior counts, which allege that Ford failed to disclose safety risks associated with the vehicle and which Count III incorporates, and he asserts that those allegations coupled with those in Count III are sufficient to state a claim. Alternatively, plaintiff requests leave to amend the complaint to include additional fraud allegations, which are set forth at pages 12-14 of plaintiff's response, and contends that these allegations would be sufficient to state a CFDBPA claim.

The Court is unpersuaded and denies leave to so amend Count III because the proposed amendment would be futile. In *De Bouse*, 922 N.E.2d at 316-17, the Illinois Supreme Court held that a plaintiff cannot maintain a CFDBPA claim when he does not receive, directly or indirectly, communication or advertising from the defendant. The Court in *De Bouse* explained that statements and omissions are actionable under the statute only where the defendant directly communicated with the plaintiff and misrepresented or omitted some material fact from that communication or made an indirect statement containing such a misrepresentation or omission with the intention that it reach the plaintiff, it did reach the plaintiff, and plaintiff relied on it to his detriment. *Id.* at 316-17 ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause."). Both the current allegations, including paragraph 67 of the complaint, which alleges that defendant "withheld . . . relevant service information" from its dealers, and the proposed allegations fail to allege such a communication

and thus fail to state a CFDBPA claim. *See, e.g.*, *Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 1418582, at *3 (N.D. Ill. Apr. 7, 2010) (dismissing a CFDBPA claim "[b]ecause [plaintiff] identifies no communication that he received that was generated by [defendant]").

Plaintiff concedes that Rule 9(b) "may" apply but urges "flexibility" "when information lies outside of plaintiff's control," (Pl.'s Resp. 10), citing *Pirelli* and *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998). While *Pirelli* and *Emery* caution against taking an "overly rigid view" of Rule 9(b)'s pleading requirements, *see Pirelli*, 631 F.3d at 442, they also stand for the proposition that a plaintiff who urges the court to loosen these pleading requirements must make a *showing* that further particulars of the alleged fraud could not have been obtained without discovery. *Pirelli*, 631 F.3d at 443-46; *Emery*, 134 F.3d at 1323. As Ford points out, plaintiff does not even attempt to make such a showing.

Count III will be dismissed without prejudice.

**D.    Breach of Express Warranty (Count IV) and "Tolling of the Statute of Limitations" (Count V)**

**1.    Statute of Limitations**

Ford contends that plaintiff's claim for breach of express warranty in Count IV is barred by the statute of limitations because more than four years have passed since the vehicle at issue was delivered to its initial purchaser. Section 2-725(1) of the Illinois Uniform Commercial Code states that "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." 810 ILCS 5/2-725(1). Section 2-725(2) provides:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

810 ILCS 5/2-725(2).

Attached to Ford's motion is the declaration of James Engle, a Ford Design Analysis Engineer, who attaches to his declaration a copy of the Illinois Traffic Crash Report for the collision that is the subject of the complaint. (Def.'s Mot., Ex. B, Decl. of James Engle, Ex. A.) Also attached to Mr. Engle's declaration is Ford's "Vehicle Information Report" for the vehicle with the Vehicle Identification Number (VIN) identified in the crash report as that of plaintiff's vehicle. (*Id.*, Ex. B.) The Vehicle Information Report is a business record for the vehicle that is created and maintained by Ford. (*Id.* ¶ 4.) Ford asserts that its Vehicle Information Report shows that the vehicle was first sold and delivered to its initial purchaser in January 2007, so the statute of limitations began to run at that time and expired four years later in January 2011, well before plaintiff filed the instant suit in August 2014.

The statute of limitations is an affirmative defense, and "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). A defendant may raise the statute of limitations in a motion to dismiss "if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks,* 578 F.3d at 579 (internal quotation marks omitted) ("Technically, one might see this as a motion for judgment on the pleadings under Rule 12(c) rather than a motion under Rule 12(b)(6), but the practical effect is the same."). This is not a case where the relevant dates that establish the defense are set forth in the complaint; instead, Ford relies on materials extraneous to the complaint. On a motion to dismiss, a court may consider only the allegations of the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice, such as public records. *Williamson v. Curran*, 714

F.3d 432, 436 (7th Cir. 2013); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639-40 (7th Cir. 2008).

The materials Ford attaches to its motion do not fall within any of these categories. Accordingly, the Court may not consider them without treating this portion of Ford's motion as one for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713-14 (7th Cir. 2013). Plaintiff argues that he should be allowed to conduct discovery regarding the application of the statute of limitations. The Court agrees. Plaintiff has not been given a reasonable opportunity to present all material that would be pertinent to Ford's defense. Considering the issue would be premature at this stage of the litigation. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) (stating that issues affecting a statute of limitations, such as tolling or estoppel, should not be decided at the pleading stage because evidence is required and it "is best to await a final decision rather than leap into a subject that evidence may cast in a new light").

In Count V, which is titled "tolling of the statute of limitations," plaintiff invokes fraudulent concealment and alleges that Ford knowingly concealed from plaintiff the "true nature, quality, and character" of the vehicle and that Ford is therefore estopped from relying on any statutes of limitations. (Compl. ¶¶ 97-98, 108.) Plaintiff also claims that "the Discovery Rule is tolled to bar application of any statute of limitation." (*Id.* ¶ 102.) Ford contends that plaintiff's allegations in Count V must be stricken because plaintiff "pleads insufficient facts to

establish any affirmative act on the part of Ford to conceal Plaintiff's cause of action from him." (Def.'s Mot. 11.)

The Court will strike Count V as a separate count, but not its content, and not for the reason advanced by Ford. Count V is not an independent cause of action and should not be designated as a separate count. It contains allegations designed to plead around the statute of limitations. This effort goes beyond what is necessary. "Complaints need not contain any information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (emphasis omitted). As the Court has explained, it is too soon to tackle the issue of whether plaintiff can overcome Ford's statute of limitations defense to the claim for breach of warranty. Although unnecessary, the allegations contained in Count V may remain in the complaint, but the Court will consider them to be a part of Count IV and not a separate count titled "Count V."

## 2. Warranty Terms

Ford contends alternatively that Count IV must be dismissed because plaintiff fails to allege the terms of the express warranty that Ford purportedly breached. The complaint alleges that Ford "expressly warranted through statements and advertisements that the Vehicle here was of high quality, and at a minimum, would actually work properly and safely" and that Ford breached this warranty by knowingly selling the vehicle with dangerous defects to the lessor here. (Compl. ¶¶ 89-90.) In Ford's view, these allegations are conclusory because they do not

"identify the statements or advertisements upon which [plaintiff's] claim rests." (Def.'s Mot. 7.) Plaintiff asserts that his allegations pass muster under federal notice-pleading standards.[4]

Even without a recitation of the exact statement or advertisement that contained the alleged express warranties, plaintiff has alleged what the warranties entailed and therefore raised a right to relief above a speculative level. *See Bray v. Fresenius Med. Care Aktiengesellschaft Inc.*, No. 06 C 50197, 2007 WL 7366260, at *10 (N.D. Ill. Aug. 30, 2007). Although plaintiff's allegations could be more specific, they are sufficient to put Ford on notice of the claim and allow the Court to draw the reasonable inference that Ford is liable for the misconduct alleged, which is all that *Twombly* and *Iqbal* require. Ford's motion to dismiss is denied as to Count IV.

## CONCLUSION

The motion of defendant, Ford Motor Company, to dismiss the complaint [14] is granted in part and denied in part. Defendant's motion is granted as to Count III, which is dismissed without prejudice, and as to plaintiff's claims in Counts I and II to the extent that plaintiff seeks to recover economic losses with respect to alleged excessive lease payments, lost income caused by plaintiff's driving prohibition, and fees and expenses incurred in connection with the criminal litigation, which are dismissed with prejudice. Defendant's motion is denied as to plaintiff's claims in Counts I and II to the extent that plaintiff seeks damages for personal injury, and as to Counts IV and V, with the caveat that Count V is stricken as an independent count but its allegations are not stricken and are now considered to be a part of Count IV.

---

[4] Plaintiff argues that he has "implicitly alleged breach of implied" warranties as well. (Pl.'s Resp. 9.) That argument is rejected. Count IV is titled "breach of express warranty," and nowhere in the complaint does plaintiff allege a breach of implied warranty, whether implicitly or explicitly.

This case is set for a status hearing on March 19, 2015 at 9:30 a.m.

**SO ORDERED.**                              **ENTERED:    March 2, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**